IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT; ORCHARD ENTERPRISES NY, INC.; FOUNDATION MEDIA, LLC; SONY MUSIC ENTERTAINMENT BRASIL LTDA,<br><br>      Plaintiffs,<br><br>v.<br><br>RHAPSODY INTERNATIONAL INC.; NAPSTER DO BRASIL LICENCIAMNTO DE MUSICA LTDA, INFINITE REALITY, INC., DOES 1-10,<br><br>      Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Sony Music Entertainment, Orchard Enterprises NY, Inc., Foundation Media, LLC, and Sony Music Entertainment Brasil LTDA (collectively, "Plaintiffs" or "Sony Music"), by and through their attorneys, allege as follows.

### INTRODUCTION

1.   This is an action to recover over $9.2 million in admittedly past-due royalties and fees owed to Plaintiffs under four license agreements, as well as to recover damages for Defendants' deliberate infringement of Sony Music's copyrighted sound recordings.

2.   Sony Music is one of the world's largest record companies. Through substantial investments of money, time, and creative effort, Sony Music and its recording artists have developed some of the most iconic and popular sound recordings of all time, as well as many of today's biggest hits.

3. A significant portion of Sony Music's return on its investment in recorded music comes from licensing recordings to others, such as Defendants, to make recordings available for streaming on their platforms.  When companies exploit Sony Music's sound recordings for commercial benefit without authorization, this not only harms Sony Music by depriving it of compensation, but it also reduces the incentive to invest in the creation and dissemination of new music.

4. Defendants operate a music streaming service under the brand name Napster, which provides its users with access, via streaming or conditional download, to sound recordings and music videos.  Defendants have entered into license agreements with Plaintiffs for the right to stream Plaintiffs' valuable sound recordings to their subscribers.

5. But Defendants have not paid the money that they owe under those license agreements, despite their clear contractual obligations to remit monthly fees and royalties to Plaintiffs.

6. On March 5, 2025, Defendants acknowledged in writing an "outstanding balance" of $6,787,466 owed under three of the license agreements, and agreed to a payment plan to remit these past-due amounts.

7. Defendants failed to make any of the required payments under that plan, however, and have also failed to make service payments that have since become due, bringing the total amount Defendants have failed to pay Plaintiffs, in breach of the parties' agreements, to over $9.2 million before interest.

8. In June and July 2025, Plaintiffs accordingly terminated Defendants' licenses to use Sony Music's sound recordings on Napster.  Despite that termination, Defendants

have continued to reproduce, distribute, publicly perform and otherwise exploit Sony Music Entertainment's sound recordings on Napster, without any legal right to do so.

9. Defendants' exploitation of Plaintiffs' valuable intellectual property without compensation to Plaintiffs has caused Plaintiffs substantial harm. Accordingly, Plaintiffs bring this action to recover the millions of dollars Defendants owe to Plaintiffs under the parties' agreements, as well as to seek relief for Defendants' willful infringement of Plaintiffs' copyrights.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1138(a), as this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*., as well as pursuant to 28 U.S.C. § 1367, based on the Court's supplemental jurisdiction.

11. This Court has personal jurisdiction over this matter because Defendants Rhapsody and Rhapsody Brazil contractually consented to jurisdiction and venue in New York County. This Court also has personal jurisdiction over Defendants, including Infinite Reality, pursuant to CPLR § 302 because, among other things: (a) Defendants transact business in New York, including providing the Napster service to individuals in New York; (b) Defendants have committed tortious acts within New York, including reproducing, distributing, and publicly performing Sony Music sound recordings to individuals in New York; and (c) Defendants' ongoing infringement of Sony Music Entertainment's copyrighted works causes injury to, and is directed at Sony Music Entertainment, which is domiciled in the state of New York.

12. Venue is proper in this district under 28 U.S.C. §§ 1391. Venue is also proper in this district because agreements between Defendants Rhapsody and Rhapsody Brazil

and Sony Music provide that any action regarding the agreements shall be brought in courts located in New York County.

**PARTIES**

13. Plaintiff Sony Music Entertainment ("SME") is a Delaware general partnership, the partners of which are domiciled in New York and Delaware. SME's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York, and it has substantial business operations in this District.

14. Plaintiff Orchard Enterprises NY, Inc. ("Orchard") is a New York corporation with its principal offices located at 23 E. 4th Street, 3rd Floor, New York, New York.

15. Plaintiff Foundation Media ("Foundation Media") is a Delaware limited liability company, with its headquarters and principal place of business located at 25 Madison Avenue, 26th Floor, New York, New York.

16. Plaintiff Sony Music Entertainment Brasil LTDA ("SME Brazil") is a limited liability company with offices located at Rua Lauro Müller, 116-40th floor, Rooms 4001 to 4003, Rio de Janeiro, RJ.

17. Defendant Rhapsody International Inc. ("Rhapsody") is a Delaware corporation with its headquarters located in San Francisco, California. Rhapsody directly owns 100% of Napster Luxembourg S.À R.L. ("Napster Luxembourg").

18. Defendant Napster Do Brasil Licenciamento de Musica LTDA ("Rhapsody Brazil") is a limited liability company with offices located at Rua Dom Jose de Barros, No. 177, 4th Floor, Suite 402, Sao Paulo, Sau Paulo.

19. Defendant Infinite Reality, Inc. ("Infinite Reality") is a Delaware corporation with its headquarters located in Norwalk, Connecticut.

20. Sony Music is informed and believes, and on that basis alleges, that each of Does 1-10 (the "Doe Defendants") personally directs and participates in, and receives a financial benefit from, the conduct alleged herein, or is otherwise responsible for and proximately caused the harm and damages alleged herein. Sony Music is unaware of the true names and capacities of the Doe Defendants, and for that reason, sues such Defendants by such fictitious names.

**FACTUAL ALLEGATIONS**

**A.   Sony Music's Sound Recordings and Licensing Business**

21. Sony Music is home to some of the world's most well-known record labels, including Columbia Records, RCA Records, Arista Records, and Epic Records, through which it owns and/or controls the copyrights in sound recordings by both world-renowned established artists and trending new acts that span genres.  Moreover, Sony Music invests heavily in signing and developing new artists and in marketing and promoting their recordings.

22. Sony Music monetizes its sound recording copyrights through physical sales and digital distribution (including through streaming and downloads), as well as through licensing the use of sound recordings to third parties, including for use in internet-based and app-based media and streaming services.  For example, Sony Music regularly licenses its sound recordings for use by streaming companies, such as Spotify and Apple Music, and social media platforms, such as TikTok, Instagram, Facebook, and YouTube.

23. Those who use or facilitate others' use of Sony Music's sound recordings, including in connection with streaming services, are obligated to follow copyright laws and ensure such use is authorized.

B.  **Plaintiffs' License Agreements with Defendants**

24. Over the past 14 years, Plaintiffs have entered into a number of license agreements that granted Defendants certain limited licenses to use Plaintiffs' sound recordings, including for use on Napster, in exchange for fees and royalty payments.

25. On or around June 17, 2011, Foundation Media entered into a Content License Agreement for Streaming and Downloading Sound Recordings with Rhapsody (together with any amendments thereto, the "Foundation Media Content License Agreement"). The Foundation Media Content License Agreement grants Rhapsody a non-exclusive license to, *inter alia*, publicly perform, reproduce, and distribute sound recordings in Foundation Media's catalog as necessary to enable users of Rhapsody's digital music service (i.e., Napster) to stream or conditionally download the recordings. In exchange, Rhapsody agreed to remit license fees to Foundation Music, to be calculated and paid on a monthly basis.

26. On or around April 1, 2013, The Orchard entered into a Content License Agreement for Streaming and Downloading Sound Recordings with Rhapsody (together with any amendments thereto, the "Orchard Content License Agreement"). The Orchard Content License Agreement granted Rhapsody a non-exclusive license to, *inter alia*, publicly perform, reproduce, and distribute sound recordings in The Orchard's catalog as necessary to enable users of Rhapsody's digital music service (i.e., Napster) to stream or conditionally download the recordings. In exchange, Rhapsody agreed to remit license fees to The Orchard, to be calculated and paid on a monthly basis.

27. SME and SME Brazil entered into a Content Integration Agreement with Rhapsody and Rhapsody Brazil (collectively the "Rhapsody Defendants"), effective as of April 1, 2014 (together with any amendments thereto, the "Content Integration Agreement"). The Content Integration Agreement granted Rhapsody and Rhapsody Brazil with a non-exclusive

6

license to, *inter alia*, publicly perform, reproduce, and distribute sound recordings in SME's catalog as necessary to enable users of Rhapsody's digital music service (i.e., Napster) to stream or conditionally download the recordings. In exchange, Rhapsody and Rhapsody Brazil agreed to remit license fees to SME and SME Brazil, to be calculated and paid on a monthly basis.

28. SME also entered into an agreement with Rhapsody in July 2019 (together with any amendments thereto, the "Framework Agreement") by which SME granted Rhapsody a non-exclusive license to make SME recordings available in connection with certain third party services. The Framework Agreement required Rhapsody to pay SME service fees pursuant to various service schedules relating to particular third party services.

29. All Sony Music sound recordings available through Napster were delivered to Defendants by or on behalf of Sony Music pursuant to these agreements, and Defendants are aware that Sony Music owns or otherwise controls the copyrights to each of those sound recordings.

C. **Defendants' Failure to Make Payments Under the Agreements**

30. For over a year, Defendants have failed to pay Plaintiffs the license fees and royalty payments as required by the Foundation Media Content License Agreement, Orchard Content License Agreement, Content Integration Agreement, and Framework Agreement—all while Defendants continued to collect subscription fees from their millions of paying users.

31. On November 3, 2024, Defendant Rhapsody's parent company entered into a term sheet with Infinite Reality, Inc. in which Infinite Reality, Inc. would purchase 100% of the issued and outstanding shares of Rhapsody's parent company (the "Contemplated Transaction"). Under the Content Integration Agreement and Framework Agreement, however, the Contemplated Transaction would trigger a right by SME to terminate these agreements, which would deprive Rhapsody of the ability to stream Plaintiffs' valuable sound recordings.

32. SME agreed to waive this termination right—the right to terminate solely due to the Contemplated Transaction—in exchange for Defendants' commitment to get current on the substantial outstanding balance owed to Plaintiffs. Specifically, SME, Rhapsody, and Napster Luxembourg executed a Waiver of Termination Right for "Change of Control" and "Ownership Event" on March 5, 2025 ("Waiver Letter"), under which SME waived its right to terminate the Content Integration Agreement and Framework Agreement, due solely to the Contemplated Transaction, in exchange for a payment plan for Defendants' outstanding balance.

33. The Waiver Letter provided that Rhapsody must pay the outstanding balance of $6,787,466 owed to SME and The Orchard across four installments: the first due 15 days after the closure of the Contemplated Transaction, the second due 30 days after the Contemplated Transaction, the third due on or before May 31, 2025, and the fourth due on or before January 15, 2026.

34. The Waiver Letter provided that SME's agreement to the deferred payment schedule contained therein was contingent on Rhapsody making timely payments of service fees due after the closing of the Contemplated Transaction under the Content Integration Agreement, Orchard Content License Agreement, and Framework Agreement. If Rhapsody failed to make timely payments of such service fees, the Waiver Letter provides that "the full outstanding amount of the Outstanding Balance shall become immediately due and payable without further notice from SME."

35. Rhapsody also acknowledged in the Waiver Letter that the outstanding balance reflected therein may not be the full amount of payments owed to SME (including The Orchard) and that SME may require all outstanding financial reporting before determining the full amount of outstanding payments.

8

36. The Contemplated Transaction closed on March 25, 2025. Accordingly, the first payment under the Waiver Letter was due by April 9, 2025, the second payment was due by April 24, 2025, and the third payment was due by May 31, 2025. Rhapsody and Napster Luxembourg not only failed to make these payments to SME and The Orchard, but also failed to remit any service fees that became due after the March 25, 2025 closing, thus accelerating the full $6,787,466 outstanding balance set forth in the Waiver Letter. Those unpaid service fees include $485,919 for sales activity reported for February 2025, $474,181 for sales activity reported in March 2025, $485,821 for sales activity reported in April 2025, $492,878 for sales activity reported in May 2025, and $429,791 for sales activity reported in June 2025 under the Content Integration Agreement, Orchard Content License Agreement, and Framework Agreement.

37. Moreover, Rhapsody owes Plaintiff Foundation Media at least $70,150 in unpaid fees pursuant to the Foundation Media Content License Agreement.

**D.    Defendants' Infringement of SME's Copyrights**

38. On or about May 20, 2025, Sony Music sent to the Rhapsody Defendants formal notice that they were in material breach of the Content Integration Agreement and Orchard Agreement for failing to pay fees and royalties required under those agreements.

39. The Rhapsody Defendants failed to cure their failures to pay within the 30-day period provided under the Content Integration Agreement and Orchard Agreement.

40. As a result, the Content Integration Agreement and Orchard Agreement terminated effective June 23, 2025. As of that date, the Rhapsody Defendants ceased to have any right to stream, duplicate, distribute or publicly perform by digital transmission Sony Music's copyrighted sound recordings and related content.

41. Accordingly, on or about June 23, 2025, counsel for Sony Music sent a letter to Rhapsody and Rhapsody Brazil confirming that the Content Integration Agreement and the Orchard Agreement had thus terminated and demanding that the Rhapsody Defendants promptly remove, and cease and desist from all use of, SME and The Orchard sound recordings and related content. The letter also warned the Rhapsody Defendants that any continued use of such materials would constitute willful copyright infringement.

42. Similarly, on June 23, 2025, Sony Music sent Rhapsody formal notice that it was in material breach of the Foundation Media Agreement and Framework Agreement for failing to pay fees and royalties required under those agreements. Rhapsody failed to cure its failure to pay within the required 30-day period. Accordingly, Sony Music terminated the Foundation media Agreement and Framework Agreement on July 25, 2025.

43. Despite the termination of all of Defendants' licenses to use any of Sony Music works, Defendants have continued to use and exploit SME sound recordings and music videos through the Napster service without authorization since June 23, 2025. For purposes of this Complaint, Sony Music has identified a sample of hundreds of sound recordings and music videos that were available through Napster and has confirmed that Defendants reproduced, distributed, and/or publicly performed these sound recordings and music videos since June 23, 2025. The sound recordings and music videos identified in this paragraph are listed in Exhibit A (the "Recordings"). This list is illustrative and non-exhaustive; on information and belief, from and after June 23, 2025, Defendants have continued to unlawfully use and exploit substantial volumes of Sony Music recordings delivered to Napster pursuant to the Content Integration Agreement and the Orchard Agreement.

44. Sony Music is, and at all times relevant to this proceeding was, the sole owner or exclusive licensee of all right, title, and interest in and to the United States copyrights in the Recordings.

45. The copyrights in the Recordings are valid and are registered, or filed pursuant to 17 U.S.C. § 1401, with the United States Copyright Office.

46. Napster's ongoing infringing conduct can only be described as willful. Napster knows that it is required to obtain a license to use SME's copyrighted sound recordings on the Napster service and, after the termination of the Content Integration Agreement, it no longer had such a license. Indeed, on or about July 18, 2025, Sony Music reiterated the demand that Rhapsody Defendants remove its content from the Napster service.

47. Moreover, the Napster terms of use contain the representation that it "respect[s] the intellectual property rights of our artists and content providers," and acknowledges that its services "including the available content" are "the property of Napster or its licensors and are protected by copyright and other intellectual property laws."

## CLAIMS

### Count I: Breach of Content Integration Agreement
### (Against Rhapsody and Rhapsody Brazil)

48. Plaintiffs incorporate paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. The Content Integration Agreement was executed by and is binding on Rhapsody, Rhapsody Brazil, SME, and SME Brazil.

50. Pursuant to Section 6.04 of the Content Integration Agreement, Rhapsody and Rhapsody Brazil were required to pay SME and SME Brazil fees and royalties on a monthly basis.

51. Additionally, by executing the Waiver Letter, Rhapsody agreed to a payment schedule by which it would pay outstanding fees and royalties owed to SME.

52. As of the date of this Complaint, Rhapsody and Rhapsody Brazil have failed to pay all fees and royalties owed to SME and SME Brazil under the Content Integration Agreement, including the outstanding balance payments required pursuant to the Waiver Letter.

53. SME and SME Brazil performed its obligations under the Content Integration Agreement through the termination of that agreement.

54. Accordingly, Rhapsody and Rhapsody Brazil breached the Content Integration Agreement, entitling SME and SME Brazil to damages in an amount to be determined at trial.

### Count II: Breach of Orchard Content License Agreement
### (Against Rhapsody)

55. Plaintiffs incorporate paragraphs 1 through 47 of this Complaint as if fully set forth herein.

56. The Orchard Content License Agreement was executed by and is binding on Rhapsody and The Orchard.

57. Pursuant to Section 7 of the Orchard Content License Agreement, Rhapsody was required to pay The Orchard license fees on a monthly basis.

58. Additionally, by executing the Waiver Letter, Rhapsody agreed to a payment schedule by which it would pay outstanding fees owed to The Orchard.

59. As of the date of this Complaint, Rhapsody has failed to pay all license fees owed to The Orchard under the Orchard Content License Agreement, including the outstanding balance payments required pursuant to the Waiver Letter.

60. The Orchard performed its obligations under the Orchard Content License Agreement through the termination of that agreement.

61. Accordingly, Rhapsody has breached the Orchard Content License Agreement, entitling The Orchard damages in an amount to be determined at trial.

### Count III: Breach of Framework Agreement
### (Against Rhapsody)

62. Plaintiffs incorporate paragraphs 1 through 47 of this Complaint as if fully set forth herein.

63. The Framework Agreement was executed by and is binding on Rhapsody and SME.

64. Pursuant to Section 11 of the Framework Agreement, Rhapsody was required to pay SME service fees in accordance with the service schedules thereto.

65. Additionally, by executing the Waiver Letter, Rhapsody agreed to a payment schedule by which it would pay outstanding fees owed to SME.

66. As of the date of this Complaint, Rhapsody has failed to pay all fees and royalties owed to SME under the Framework Agreement, including the outstanding balance payments required pursuant to the Waiver Letter.

67. SME has performed its obligations under the Framework Agreement.

68. Accordingly, Rhapsody has breached the Framework Agreement, entitling SME to damages in an amount to be determined at trial.

### Count IV: Breach of Foundation Media Content License Agreement
### (Against Rhapsody)

69. Plaintiffs incorporate paragraphs 1 through 47 of this Complaint as if fully set forth herein.

70. The Foundation Media Content License Agreement was executed by and is binding on Rhapsody and Foundation Media.

71. Pursuant to Section 7 of the Foundation Media License Agreement, Rhapsody is required to pay Foundation Media license fees on a monthly basis.

72. As of the date of this Complaint, Rhapsody has failed to pay all fees and royalties owed to Foundation Media under the Foundation Media Content License Agreement.

73. Foundation Media has performed its obligations under the Foundation Media Content License Agreement.

74. Accordingly, Rhapsody has breached the Foundation Media Content License Agreement, entitling Foundation Media damages in an amount to be determined at trial.

### Count V: Direct Copyright Infringement
### (Against Rhapsody)

75. Plaintiffs incorporate paragraphs 1 through 47 of this Complaint as if fully set forth herein.

76. Plaintiffs own and/or are the exclusive licensee in the United States of rights under copyright of the Recordings identified in Exhibit A. The list of Recordings in Exhibit A is illustrative and nonexhaustive; Plaintiffs will supplement this listing as discovery progresses.

77. All of the Recordings have been registered with the U.S. Copyright office.

78. The use and exploitation of Plaintiffs' sound recordings, including without limitation the Recordings, through the Napster service from and after June 23, 2025 constitutes copyright infringement. Among other things, Defendants have unlawfully reproduced, distributed, and/or publicly performed the Recordings without authorization, in violation of 17 U.S.C. §§ 106 and 501.

79. Defendants' acts of infringement are willful, intentional, purposeful, and in disregard of and indifferent to Plaintiffs' rights.

80. As a direct and proximate result of the infringements by Defendants, Plaintiffs are entitled to damages and to Defendants' profits in amounts to be proven at trial. Alternatively, Plaintiffs are entitled to statutory damages of up to $150,000 for each work infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

81. Plaintiffs are also entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### Count VI: Vicarious Copyright Infringement
### (Against Infinite Reality and Does 1-10)

82. Plaintiffs incorporate paragraphs 1 through 47 of this Complaint as if fully set forth herein.

83. On information and belief, Infinite Reality and the Doe Defendants have the right to supervise, and direct Rhapsody to cease, the infringing activities; have a direct financial interest in these activities; profit from Rhapsody's infringement; and either failed to or refused to exercise their right to stop it.

84. As of approximately March 2025, Infinite Reality is the sole owner of, and thus exercises control over, Rhapsody. Moreover, because Rhapsody is wholly owned by Infinite Reality, Infinite Reality benefits financially from increases in Rhapsody's net income, revenue, and enterprise value, including income, revenue, and value derived from the unlawful reproduction, distribution, and/or public performance of the Recordings without authorization on the Napster service.

85. Doe Defendants are individual officers and employees of Infinite Reality who are directly responsible for allowing Rhapsody's infringing activity to continue in order to obtain financial benefit through their positions with Infinite Reality.

86. As a direct and proximate result of the vicarious infringement by Infinite Reality and the Doe Defendants, Plaintiffs are entitled to damages and to Infinite Reality's and Doe Defendants' profits in amounts to be proven at trial. Alternatively, Plaintiffs are entitled to statutory damages of up to $150,000 for each work infringed, or in such other amounts as may be proper under 17 U.S.C. § 504(c).

87. Further, Plaintiffs are entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs request that this Court enter a judgment in its favor and against Defendants as follows:

a) for damages for Defendants' breaches of contract in an amount to be determined at trial, but not less than $9.2 million before interest;

b) for Plaintiffs' actual damages and Defendants' profits attributable to Defendants' copyright infringement pursuant to 17 U.S.C. § 504(b), in amounts to be proven at trial, or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), for statutory damages up to the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c);

c) for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5);

d)  for an order enjoining Defendants from further infringing Plaintiffs' copyrights, pursuant to 17 U.S.C. § 502;

e)  for pre-judgment and post-judgment interest; and

f)  for such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues that are so triable.

Date: August 1, 2025

By: */s/ Jonathan M. Sperling*
Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

*Attorney for Plaintiffs*